The **CONFEDERATED SALISH AND KOOTENAI TRIBES OF the FLATHEAD RESERVATION, MONTANA, et al., Plaintiffs,**

v.

The **STATE OF MONTANA, DEPARTMENT OF REVENUE, et al., Defendants.**

Civ. No. 74–40–M.

United States District Court,
D. Montana,
Missoula Division.

March 19, 1975.

Richard A. Baenen of Wilkinson, Cragun & Barker, Washington, D. C., and Victor F. Valgenti, Missoula, Mont., for plaintiffs.

Robert L. Woodahl, Atty. Gen., Thomas J. Beers and William N. Jensen, Asst. Attys. Gen., Helena, Mont., Jean A. Turnage, Sp. Asst. Atty. Gen., Polson, Mont., and Sam E. Haddon, Sp. Asst. Atty. Gen., Missoula, Mont., for defendant State of Mont.

R. Bruce McGinnis, Tax Counsel, Dept. of Revenue and Terry B. Cosgrove, Tax Counsel, Helena, Mont., for defendant Dept. of Revenue.

Richard P. Heinz, Lake County Atty., and Ted O. Lympus, Asst. County Atty., Polson, Mont., for defendants Burley, Meyers, Corrigan and Knaus.

Alex Morrison, Sanders County Atty., Thompson Falls, Mont., for defendants De Long, Stearns, Kraus and Thayer.

Robert L. Deschamps, III, Missoula County Atty., and Harold V. Dye, Asst. County Atty., Missoula, Mont., for defendants Stoutenburg, Ostergren, Browman and Cahill.

Before BROWNING, Circuit Judge, and SMITH and JAMESON, District Judges.

### ORDER and OPINION

PER CURIAM:

The Confederated Salish and Kootenai Tribes of the Flathead Reservation and four enrolled members of the Tribes

suing on behalf of themselves and all other members of the Tribes seek a judgment (1) declaring unconstitutional the enforcement against plaintiffs of the provisions of Title 53, Rev.Mont.Code, §§ 114, 1025–1029, and Title 84, Rev. Mont.Code, §§ 201, 301, 302, 404, 406, 409, 410, 4201 and 4202 and related statutes,[1] providing for the assessment and collection of personal property taxes generally, and in particular, of personal property taxes on motor vehicles; (2) for an injunction restraining the enforcement of the statutes and any regulations promulgated pursuant thereto; and (3) a refund of personal property taxes paid to the date of the court's final judgment.

A three-judge court was convened pursuant to 28 U.S.C. § 2281. The plaintiffs and all of the defendants have agreed that there are no genuine issues as to any material facts and all parties accordingly have moved for summary judgment.

In the affidavits filed in support of their motion for summary judgment, the plaintiffs establish that they have been required to pay Montana personal property taxes on their motor vehicles. Under Montana law, all motor vehicles must be registered and licensed before being permitted on the public streets and highways of Montana. R.C.M.1947 § 53–119 (1974 Supp.). The payment of a registration fee and state property taxes on motor vehicles, however, is a condition precedent to the registration of motor vehicles and the receipt of license plates. R.C.M.1947, § 53–114(3) (1974 Supp.). The plaintiffs do not challenge the vehicle registration fee, a

set fee established by the legislature (R.C.M.1947, § 53–122 (1974 Supp.)), which by law is credited to the county motor vehicle fund R.C.M.1947, § 32–3701 (1974 Supp.) and must be used for the construction, repair, and maintenance of city and county roads. R.C.M. 1947, § 32–3706 (1974 Supp.). The motor vehicle property tax, on the other hand, is based on the vehicle's assessed value and the mill levy authorized by the state and the appropriate county, school district and municipality. *See* R.C.M. 1947, §§ 53–114(4), 53–117 (1947 Supp.). Unlike the registration fee, the motor vehicle property tax is not designated a road tax and is used for general governmental purposes in the same manner as other personal property taxes. *See* R.C. M.1947 § 53–117 (1974 Supp.).[2]

In urging summary judgment, the plaintiffs contend that the Montana statutes and regulations providing for the imposition of personal property taxes, and specifically the tax on motor vehicles, are unconstitutional as applied to the plaintiffs under Article I, Sec. 8, Clause 3 of the United States Constitution and are violative of the Treaty of Hell Gate, July 16, 1855, 12 Stat. 975; the Organic Act for the Territory of Montana, 13 Stat. 85, May 26, 1864; Section 4 of the Enabling Act of the State of Montana, 25 Stat. 676, February 22, 1889; the holding of the United States Supreme Court in McClanahan v. Arizona Tax Commission, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); and this court's holding in Confederated Salish and Kootenai Tribes v. Moe, 392 F.Supp. 1297 (Civil No. 2145, 1974 as supplemented February 4, 1975).

---

1. R.C.M.1947, § 53–114 (1974 Supp.) establishes the procedure for the payment of state personal property taxes on motor vehicles. Sections 53–1025—1029 (1974 Supp.) relate to the tax on snowmobiles.

R.C.M.1947, § 84–201 provides that: "All property in this state is subject to taxation, except as provided in the next section". R.C. M.1947, § 84–301 (1974 Supp.) classifies property for the purposes of taxation. Section 84–302 provides the percentage of the true value of the property in each class which will serve as a basis for the imposition of

taxes. R.C.M.1947, §§ 84–404, 406, 409, 410 (1974 Supp.) establish procedures for the assessment or property. R.C.M.1947 §§ 84–4201 and 84–4202 provide for the collection of personal property taxes and the seizure and sale of property in the event that taxes are delinquent.

2. Were the motor vehicle tax, like the license fee, used solely for road and highway purposes, a different question would be presented and might well result in a different holding with respect to this tax.

The defendants in seeking summary judgment contend that this court is barred by 28 U.S.C. § 1341 from enjoining the imposition of Montana's motor vehicle tax on members of the Tribes residing on the Flathead Reservation. On the merits, defendants argue that the State of Montana has the authority to levy a property tax on motor vehicles belonging to Tribal members residing on the Reservation.

■ Our holding in Confederated Salish and Kootenai Tribes v. Moe is dispositive of the issues herein. In *Moe* identical jurisdictional issues were raised. We concluded that despite 28 U.S.C. § 1341,[3] this court had jurisdiction to entertain the action under 28 U.S.C. § 1362[4] with respect to the plaintiff Tribes and under 28 U.S.C. § 1343(3)[5] and 42 U.S.C. § 1983[6] with respect to the individual Tribal members. For the reasons discussed in *Moe,* we reject defendants' § 1341 argument in this case and conclude that this court has jurisdiction to entertain plaintiffs' action.

■ Consistent with our reasoning in *Moe,* we hold that R.C.M.1947 §§ 53–114, 53–1025—1029, 84–201, 301, 302, 404, 406, 409, 410, 4201 and 4202 are unconstitutional in so far as they require the payment of a motor vehicle tax, and other personal property taxes, by members of the plaintiff Tribes residing on the Flathead Reservation. In *Moe,* this court, relying on *McClanahan, supra,* held that the State of Montana could not impose its cigarette excise tax on the sale of cigarettes by a member of the plaintiff Tribes on the Flathead Reservation to any Indian residing on the Reservation. The only difference between this case and *Moe* is the nature of the tax involved. We conclude that this difference is not so substantial as to make the cases distinguishable. The revenues derived both from the cigarette tax and the motor vehicle tax (as well as other personal property taxes) are used for general governmental purposes. The "tax event", i. e., the sale of cigarettes or the ownership of a motor vehicle as of January 1 of each year (R.C.M.1947, § 84–406(2) (1974 Supp.)) in both cases occurs on the reservation. *Moe* and *McClanahan* are therefore controlling and require this court to grant summary judgment in favor of the plaintiffs.

We recognized in *Moe* that conditions have changed on all Indian reservations (and particularly on the Flathead Reservation) since the treaties were negotiated with the various Indian tribes, but

3. 28 U.S.C. § 1341 provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State".

4. 28 U.S.C. § 1362 provides:
"1362. Indian tribes.—The district courts shall have original jurisdiction over all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."
28 U.S.C. § 1362 does not confer jurisdiction with respect to the individual plaintiffs but only with respect to the plaintiff Tribes.

5. 28 U.S.C. § 1343(3) provides in pertinent part:
"1343. Civil rights and elective franchise. —The district courts shall have. original jurisdiction of any civil action authorized by law to be commenced by any person:
* * * * *
"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

6. 42 U.S.C. § 1983 provides:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

noted, as the Court said in *McClanahan,* that it is "still true, as it was in the last century" that "the relation of the Indian tribes living within the borders of the United States . . . [is] an anomalous one and of a complex character". *Id.,* 411 U.S. at 173, 93 S.Ct. at 1263. This anomalous, semi-autonomous character of Indian tribes was recently reaffirmed by the Supreme Court in United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). The Court in holding that Congress had the authority to regulate the distribution of alcoholic beverages in Indian country and could delegate that authority to a reservation's tribal council stated:

". . . Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory, Worcester v. Georgia, 6 Pet. 515, 557, 8 L.Ed. 483 (1832); they are 'a separate people' possessing 'the power of regulating their internal and social relations . . . .' United States v. Kagama, 118 U.S. 375, 381–382, 6 S.Ct. 1109, 1113, 30 L.Ed. 228 (1886); McClanahan v. Arizona State Tax Comm'n, 411 U.S. 164, 173, 93 S.Ct. 1257, 1261–1262, 36 L.Ed.2d 129 (1973)." 419 U.S. at 557, 95 S.Ct. at 717.

We are not insensitive to the growing concern in Montana and other states with respect to the relationship between the states and the Indians who reside on Indian reservations, particularly in the area of taxation. Judge Smith in his dissent in *Moe* delineated the nature of the conflict which is developing in the state-tribal sphere.

The relationship between the United States and Indian tribes and between individual states and Indian tribes, however, must still be determined by relevant treaties. As noted in *Moe,* any changes in the rights and privileges the Indian tribal members have enjoyed under the Treaty of 1855 must be made by treaty stipulation or by Act of Congress. If changes are deemed necessary in the relationship between the Tribes and a state, it is Congress, rather than the courts, from whom relief must be sought.

The motion of the plaintiffs for summary judgment is granted, and the motion of the defendants is denied.

We do not consider at this time possible consequences of our holding that the motor vehicle tax and other personal property taxes may not be collected from members of the plaintiff Tribes residing on the Flathead Reservation. For the reasons set forth in our Memorandum in *Moe,* dated March 19, 1975, we deem it advisable to reserve any further questions pending a final determination of the constitutionality of the statutes in question with respect to their enforcement against plaintiffs. If the parties are then unable to resolve any remaining issues in the light of that determination, they will be given an opportunity to raise those issues through appropriate proceedings.

Judgment in conformity with this order will be entered forthwith.

RUSSELL E. SMITH, District Judge (concurring in part and dissenting in part):

On the ground of stare decisis, Confederated Salish and Kootenai Tribes v. Moe, 392 F.Supp. 1297 (Civil No. 2145, Mont.1975) I concur in that portion of the opinion which holds that the personal property including automobiles of reservation Indians, who have not been issued a fee patent, may not be taxed.

I dissent from the opinion in so far as it declares R.C.M.1947 § 53–114 unconstitutional. I think that the state may as it did in § 53–114 condition the issuance of a license on the payment of property and license taxes. The Indian and his property does now have sanctuary from taxation in the reservation and the Indian may drive his unlicensed untaxed automobile in the reservation as he pleases. But the sanctuary ends when off reservation state services are demanded, i. e., the right to drive on off reservation highways and the right to the protection afforded by the off reser-

vation machinery of the Registrar of Motor Vehicles.

The Flathead treaty says nothing about the Indians' rights to license and register motor vehicles. There is no Act of Congress which requires the state to license and register untaxed Indian motor vehicles for off reservation use. In the history of Indian taxation the courts have accomplished much by inference but Congress didn't leave much room for an inference that the untaxed Indian has a right to the full gamut of state services when it said in the Montana Enabling Act:

"The constitutions shall be republican in form, and make no distinction in civil or political rights on account of race or color, except as to Indians not taxed . . ." Act of Feb. 22, 1889, 25 Stat. 676.

I see no reason why the untaxed Indian should not pay to drive his car off reservation exactly as other citizens do. If the reservation Indian can pick and choose the taxes which he will pay in exchange for off reservation state services then in my opinion we have departed from the concept that there may be no discrimination based on race alone.