730 F.2d 1139
 CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, Appellant,
v.
Raymond KASSEL, et al., Appellees.
 No. 83-1337.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 11, 1983.
Decided March 27, 1984.
 
 John Duncan Varda, John H. Lederer, Lisa F. Kane, DeWitt, Sundby, Huggett & Schumacher, S.C., Madison, Wis., Terry C. Hancock, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for appellant.
 Mark E. Schantz, of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, Iowa, Lester A. Paff, Asst. Atty. Gen., Dept. of Transp., Ames, Iowa, for appellees.
 R. Richard Bittner, Robert D. Lambert, Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, Iowa, for Motor Club of Iowa.
 Before BRIGHT, JOHN R. GIBSON, and FAGG, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Consolidated Freightways Corporation of Delaware was successful in its efforts to have Iowa's statute restricting Consolidated's use of sixty-five foot twin trailers declared invalid as a violation of the Commerce Clause. It now seeks attorney's fees from the State of Iowa under 42 U.S.C. Sec. 1988 (Supp. V 1981), an issue which was bifurcated in the earlier hearing. The district court[1] held that Consolidated failed to demonstrate a fourteenth amendment violation as a basis for applying 42 U.S.C. Sec. 1983 (Supp. V 1981) and that its success on the Commerce Clause claim did not establish a deprivation of any right, privilege, or immunity secured by the Constitution within the meaning of 42 U.S.C. Sec. 1983. The claim for attorney's fees was denied. We affirm.
 
 
 2
 Consolidated brought its action against the State of Iowa to declare its statute, Iowa Code Sec. 321.457 (1979), restricting the length of trailers and prohibiting the use of sixty-five foot twins within its borders, to be invalid. The district court in Consolidated Freightways Corp. v. Kassel, 475 F.Supp. 544 (S.D.Iowa 1979), found for plaintiff on the merits of the Commerce Clause claim. We affirmed, 612 F.2d 1064 (8th Cir.1979), and the United States Supreme Court in Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981), also affirmed. The district court conducted a fourteen-day trial on the issue of safety and on the burden of interstate commerce. The Supreme Court concluded:
 
 
 3
 The controlling factors thus are the findings of the District Court, accepted by the Court of Appeals, with respect to the relative safety of the types of trucks at issue, and the substantiality of the burden on interstate commerce.
 
 
 4
 Because Iowa has imposed this burden without any significant countervailing safety interest, its statute violates the Commerce Clause. The judgment of the Court of Appeals is affirmed.
 
 
 5
 Kassel, 450 U.S. at 678-79, 101 S.Ct. at 1320-21 (footnotes omitted).
 
 
 6
 In its order denying an award of attorney's fees, the district court observed that plaintiff had prevailed on the Commerce Clause ground and that the Sec. 1983 ground had not been decided by the district court, the Eighth Circuit or the Supreme Court. The district court then considered the Sec. 1983 argument insofar as it was based upon the fourteenth amendment and found that even though the statute on truck-length limitation was later found to be invalid, the Iowa legislature had authority for due process purposes to pass such statute. There was thus no due process violation under the fourteenth amendment to form a basis for application of Sec. 1983. The district court then proceeded to consider the question of whether the Commerce Clause secured rights cognizable under Sec. 1983 and concluded that it did not. The basis for the district court's decision was that the Commerce Clause dealt with the distribution of powers between the federal and state governments under the federal system, and Sec. 1983, which was concerned with the relationship between individuals and the states in matters involving life, liberty or property, was not intended to apply.
 
 
 7
 Consolidated argues that Sec. 1983 applies to violations of the Commerce Clause because the right to engage in commerce is secured by the Constitution, and that the district court erred in concluding to the contrary. Consolidated also argues that Iowa's ban on the operation of sixty-five foot twins deprived it of property and deprived its employees and others of their lives and safety. We deal with these arguments in turn.
 
 I.
 
 8
 42 U.S.C. Sec. 1988 provides for the allowance of reasonable attorney's fees as part of the costs "[i]n any action or proceeding to enforce a provision of ... [42 U.S.C. Sec.] 1983." Under 42 U.S.C. Sec. 1983:
 
 
 9
 Every person who, under color of any statute, ... of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 10
 In its amended complaint, Consolidated alleged that Iowa's statutory ban on sixty-five foot twin trailer trucks violated the Commerce Clause, the fourteenth amendment and 42 U.S.C. Sec. 1983. Without considering whether Sec. 1983 was an appropriate basis for liability, the court found for Consolidated on the Commerce Clause ground. However, the fact that a party prevails on a ground other than Sec. 1983 does not preclude an award of attorney's fees under Sec. 1988. If Sec. 1983 would have been an appropriate basis for relief, then Consolidated is entitled to attorney's fees under Sec. 1988 even though relief was actually awarded on another ground. See Maher v. Gagne, 448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 2576 n. 15, 65 L.Ed.2d 653 (1980).
 
 II.
 A.
 
 11
 Since Consolidated prevailed on its Commerce Clause claim, the first question is whether the Commerce Clause secures rights which are cognizable under Sec. 1983. In its brief, Consolidated cites two cases which have held that a violation of the Commerce Clause constitutes a claim under Sec. 1983.
 
 
 12
 In Confederated Salish and Kootenai Tribes v. Moe, 392 F.Supp. 1297 (D.Mont.1975), aff'd, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976),[2] an Indian tribe and certain of its individual members challenged a Montana taxing statute, partly on Commerce Clause grounds. After finding jurisdiction over the tribe's claims under 28 U.S.C. Sec. 1362 (1976), the district court went on to find that it had jurisdiction over the individual claims under 28 U.S.C. Sec. 1343(3) (Supp. V 1981),[3] because the "alleged violation of Commerce Clause rights is sufficient to state a claim under Sec. 1983." Kootenai, 392 F.Supp. at 1304-05.
 
 
 13
 Kennecott Corp. v. Smith, 637 F.2d 181 (3d Cir.1980), the other case cited by Consolidated, simply stated in a footnote, without further explanation, that the plaintiff's action was properly brought under Sec. 1983 because it sought "redress for deprivations of constitutional rights secured by the commerce clause and of federal statutory rights protected by the Williams Act." 637 F.2d at 186 n. 5. We do not find these cases to be persuasive because neither Kootenai, Kennecott, nor the cases upon which they rely substantially discuss whether the Commerce Clause is a Constitutional provision which secures rights within the meaning of Sec. 1983.
 
 
 14
 The district court in Kootenai, as does Consolidated here, relied solely upon the dictum in Lynch v. Household Finance Corp., 405 U.S. 538, 549 n. 16, 92 S.Ct. 1113, 1120 n. 16, 31 L.Ed.2d 424 (1972), that the phrase "rights, privileges, or immunities secured ... by the Constitution or laws of the United States" embraces not only fourteenth amendment rights but "all of the Constitution and laws of the United States."[4] (emphasis in original). Lynch, however, involved a fourteenth amendment due process and equal protection challenge, not a Commerce Clause claim. As explained in Consolidated's brief, Lynch addressed the question of whether "property rights" as well as "personal rights" are within the ambit of Sec. 1983. 405 U.S. at 542, 92 S.Ct. at 1117. Lynch did not hold that the Commerce Clause is a source of rights within the meaning of Sec. 1983.
 
 
 15
 The authority relied upon in Kennecott is also not dispositive. The only case cited in Kennecott is Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Although the Supreme Court held in Thiboutot that the phrase "and laws" in Sec. 1983 is not limited to federal statutes providing for equal rights, the Supreme Court has also recognized that not all statutes secure rights within the meaning of Sec. 1983, even though individuals may benefit from their provisions. See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).[5] Neither the holding in Lynch nor Thiboutot provides an answer to the question of whether the Commerce Clause is a Constitutional provision which secures rights within the meaning of Sec. 1983.
 
 
 16
 As pointed out by the district court in its well-reasoned opinion, 556 F.Supp. 740, 743 (S.D.Iowa 1983), Commerce Clause actions traditionally have been brought directly under the Constitution with jurisdiction predicated on 28 U.S.C. Sec. 1331 (Supp. V 1981) rather than under Sec. 1983[6] and its jurisdictional counterpart, Sec. 1343(3), even though under Sec. 1331 there was an amount in controversy requirement not necessary for actions brought under Sec. 1983.[7]
 
 
 17
 An early application of this rule is found in Connor v. Rivers, 25 F.Supp. 937 (N.D.Ga.1938), aff'd, 305 U.S. 576, 59 S.Ct. 359, 83 L.Ed. 363 (1939). In Connor, the district court stated that the history of Sec. 1983 (then codified as 8 U.S.C. Sec. 43) persuaded them that its jurisdictional counterpart, Sec. 1343(3) (then codified as 28 U.S.C. Sec. 41(14)), "does not give jurisdiction in this suit." Connor, 25 F.Supp. at 938. The court explained as follows:
 
 
 18
 While there is an allegation about the Georgia statute's interfering with interstate commerce, it is clear that there is no claim or evidence that said Georgia Statute deprives the petitioner "of any right, privilege, or immunity, secured by the Constitution of the United States ...."
 
 
 19
 Connor, 25 F.Supp. at 938.
 
 
 20
 As even Consolidated concedes, not every case arising under the Constitution falls within Sec. 1983.[8] In Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), the Supreme Court concluded that the Supremacy Clause of Article VI does not "secure" and is not itself, a "right, privilege, or immunity secured by the Constitution." The Court stated:
 
 
 21
 Thus, while we recognize that there is force to claimants' argument that the remedial purpose of the civil rights legislation supports an expansive interpretation of the phrase "secured by the Constitution," .... we must conclude that an allegation of incompatibility between federal and state statutes and regulations does not, in itself, give rise to a claim "secured by the Constitution" within the meaning of Sec. 1343(3).
 
 
 22
 Chapman, 441 U.S. at 615, 99 S.Ct. at 1915.
 
 
 23
 Although the Commerce Clause differs from the Supremacy Clause in that the Commerce Clause is a specific grant of legislative power to Congress,[9] the two clauses are analogous in the sense that both clauses limit the power of a state to interfere with areas of national concern.[10] Just as the Supremacy Clause does not secure rights within the meaning of Sec. 1983, neither does the Commerce Clause.
 
 B.
 
 24
 Iowa contends that the Commerce Clause does not establish individual rights against government, but instead allocates power between the state and federal governments. On the basis of the nature of the Commerce power as defined by the case law, including the thorough analysis of the district court in this case, and as explained by legal commentators, we must agree with the interpretation of the Commerce Clause as an allocating provision, not one that secures rights cognizable under Sec. 1983.
 
 
 25
 The Commerce Clause grants to Congress the power to regulate interstate commerce. Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). That grant of power has been held to imply a limitation upon the states. Philadelphia v. New Jersey, 437 U.S. 617, 623, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978); Hunt v. Washington Apple Advertising Commission, 432 U.S. 333, 350, 97 S.Ct. 2434, 2445, 53 L.Ed.2d 383 (1977); Cooley v. Board of Wardens, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1851).
 
 
 26
 It is clear from the language employed by the Supreme Court in Commerce Clause cases that the Commerce Clause deals with the relationship between national and state interests, not the protection of individual rights.[11] These decisions are replete with references to the national or federal interest in preventing the burdensome state regulation of interstate commerce. See, e.g., Bibb v. Navajo Freight Lines, 359 U.S. 520, 524, 79 S.Ct. 962, 965, 3 L.Ed.2d 1003 (1959); Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 537-42, 69 S.Ct. 657, 664-67, 93 L.Ed. 865 (1949); Southern Pacific Co. v. Arizona, 325 U.S. 761, 775-76, 65 S.Ct. 1515, 1523-24, 89 L.Ed. 1915 (1945).
 
 
 27
 In the Supreme Court's opinion in this very case the emphasis is on the role of the Commerce Clause in preventing state regulation from "trespass[ing] upon national interests." Kassel v. Consolidated Freightways, 450 U.S. 662, 669, 101 S.Ct. 1309, 1315, 67 L.Ed.2d 580 (1981) (emphasis added). In striking down the Iowa truck-length limitations, the Court stated that Iowa's "regulations impair significantly the federal interest in efficient and safe interstate transportation ...." Id. at 671, 101 S.Ct. at 1316 (emphasis added).[12] No where does the Court refer to the impairment, infringement, or protection of the interests or rights of the individual. Throughout the Commerce Clause cases the emphasis is on the relationship between conflicting federal and state interests, not the relationship between the individual and the state. See Raymond Motor Transportation, Inc. v. Rice, 434 U.S. 429, 440, 98 S.Ct. 787, 793, 54 L.Ed.2d 664 (1978).
 
 
 28
 To support its theory that the Commerce Clause secures rights cognizable under Sec. 1983, Consolidated has cited several Supreme Court cases which refer to a Constitutional "right" to engage in interstate commerce. Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967); Western Union Telegraph Co. v. Kansas, 216 U.S. 1, 21, 30 S.Ct. 190, 195, 54 L.Ed. 355 (1910); Crutcher v. Kentucky, 141 U.S. 47, 57, 11 S.Ct. 851, 853, 35 L.Ed. 649 (1891). Although these cases do refer to engaging in interstate commerce as a constitutional right, such cases were not dealing with the question of whether the Commerce Clause secures individual rights within the meaning of Sec. 1983. In Garrity the reference to interstate commerce was mere dictum,[13] and in both Western Union and Crutcher, the focus of the Court's opinions was on the separation of powers between the national and state legislatures.[14] Despite these references to a right to engage in interstate commerce, we agree with the district court that the Commerce Clause was adopted, and the dormant Commerce Clause doctrine evolved, not to protect individual rights, but to further the national interest in an efficient economy. See generally Hood & Sons, Inc., 336 U.S. at 537-39, 69 S.Ct. at 664-66.
 
 
 29
 Although individuals are oftentimes benefited through the indirect protection resulting from the limitations placed on the states through the dormant Commerce Clause doctrine, such benefit is not the same thing as a "right" secured by the Constitution within the meaning of Sec. 1983. As explained by Professor Gavit in his discussion of the Commerce Clause:
 
 
 30
 The Commerce Clause created no rights or privileges; it established no law other than the law of jurisdiction to regulate those engaged in interstate or foreign commerce.
 
 
 31
 B. Gavit, Commerce Clause 32-33 (1932). Professor Dowling, in his article about the relationship between state and national interests in dormant Commerce Clause cases, makes the same point: "It is true that the litigation is between private parties, but the issue touches the relative jurisdiction of nation and state." Dowling, Interstate Commerce and State Power, 27 Va.L.Rev. 1, 22-23 (1940).
 
 C.
 
 32
 The legislative history of 42 U.S.C. Sec. 1983 does not support Consolidated's view that the Commerce Clause secures individual rights of the type protected by Sec. 1983. Section 1983 was originally Sec. 1 of the Civil Rights Act of 1871.[15] The Act of 1871, also known as the Ku Klux Klan Act, was directed at the organized terrorism in the south led by the Klan, and the unwillingness or inability of state officials to control the widespread violence. The portion of the Act now codified as Sec. 1983 added civil remedies to the criminal penalties imposed by the 1866 Civil Rights Act. Chapman, 441 U.S. at 610 n. 25, 99 S.Ct. at 1912 n. 25. The origin of Sec. 1983 alone is a strong indication that Congress did not have Commerce Clause litigation in mind when it enacted Sec. 1 of the Civil Rights Act of 1871.
 
 
 33
 Section 1983 was enacted for the purpose of "ensuring a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." Chapman, 441 U.S. at 611, 99 S.Ct. at 1913; Mitchum v. Foster, 407 U.S. 225, 238, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972). Although the Supreme Court has made clear that Sec. 1983 does protect rights established by statutes enacted pursuant to authority other than the fourteenth amendment, Thiboutot, 448 U.S. at 4, 100 S.Ct. at 2504, it has not held that Sec. 1983 encompasses Constitutional provisions which allocate power between the state and federal government.[16]
 
 
 34
 Although the scope of Sec. 1983 has been expanded by the Thiboutot decision, the Supreme Court's holding that Sec. 1983 provides a cause of action for interference with rights under the Social Security Act does not represent an expansion into areas unrelated to the interests protected by the fourteenth amendment. As this Court stated in First National Bank of Omaha v. Marquette National Bank of Minneapolis, 636 F.2d 195, 198 (8th Cir.1980), cert. denied, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981), the type of rights protected by Sec. 1983 are "important personal rights akin to fundamental rights protected by the Fourteenth Amendment." Any individual benefits accruing from the Commerce Clause are completely different from the rights protected by the fourteenth amendment and do not fall within the scope of Sec. 1983.
 
 
 35
 In Marquette we held that the National Bank Act did not secure any rights, privileges, or immunities within the meaning of Sec. 1983.
 
 
 36
 [S]ection 1983 does not authorize a suit for an alleged violation of a purely economic regulatory statute affecting only commercial institutions ....
 
 
 37
 Id. at 199 n. 3. Although Marquette involved a federal statute rather than a Constitutional provision such as the Commerce Clause, we believe our position in Marquette is relevant to the instant case.
 
 
 38
 In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), Justice Douglas discerned three purposes underlying the original enactment of Sec. 1983: (1) to override discriminatory state laws; (2) to provide a remedy where state law was inadequate; and (3) to provide a federal remedy where the state remedy, although adequate in theory, was not available in practice. Monroe, 365 U.S. at 173-74, 81 S.Ct. at 476-77. To hold that an alleged violation of the Commerce Clause constitutes an action cognizable under Sec. 1983 would fail to serve any of these purposes and would be an unwarranted extension of the Civil Rights Act. We do not believe that such a cause of action was within the intent of the Congress that enacted the civil rights statutes, nor do we believe that such an interpretation of the scope of Sec. 1983 is mandated by either the language of Sec. 1983 or the nature of the Commerce Clause. We therefore hold that Sec. 1983 does not provide a remedy for a dormant Commerce Clause claim.
 
 III.
 
 39
 Consolidated contends that even if its Commerce Clause claim does not fall within the scope of Sec. 1983, Iowa's ban on sixty-five foot trailers deprived it of property without due process in violation of the fourteenth amendment. Violations of the fourteenth amendment, including those which involve deprivations of property, are clearly within the ambit of Sec. 1983. Lynch, 405 U.S. at 543, 92 S.Ct. at 1117. Consolidated argues that the Iowa legislature lacked the authority to pass its statute banning long trucks; and that therefore, the enactment of such a statute deprived Consolidated of property without due process. We agree with the district court that Consolidated has not demonstrated a fourteenth amendment violation.
 
 
 40
 A state may, pursuant to its police power, enact regulations to promote highway safety and provide for the state's general welfare. See, Nebbia v. New York, 291 U.S. 502, 523, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934); E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141, 1151-52 (5th Cir.), cert. denied, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 12 (1970). To be consistent with due process such regulations need only meet a reasonableness test. Goldblatt v. Hempstead, 369 U.S. 590, 594-96, 82 S.Ct. 987, 990-91, 8 L.Ed.2d 130 (1962); United States v. Carolene Products Co., 304 U.S. 144, 152-54, 58 S.Ct. 778, 783-84, 82 L.Ed. 1234 (1938); Nebbia, 291 U.S. at 525, 54 S.Ct. at 510; Gold Cross Ambulance & Transfer v. Kansas City, 705 F.2d 1005, 1015 (8th Cir.1983). Iowa's statute, although invalid under the Commerce Clause, would survive the more restricted scrutiny applied for purposes of due process analysis.[17]
 
 
 41
 We conclude that Consolidated has failed in its attempt to establish a fourteenth amendment violation as a basis for applying Sec. 1983. Since we also conclude that Sec. 1983 does not provide a remedy for claims under the Commerce Clause, it follows that Consolidated is not entitled to attorney's fees under Sec. 1988. Therefore, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Honorable W.C. Stuart, United States District Judge for the Southern District of Iowa
 
 
 [2]
 The Supreme Court affirmed the district court's jurisdictional holdings with regard to the tribal claims under Sec. 1362, but did not reach the district court's conclusion that jurisdiction over the individual claims existed under Sec. 1343(3). Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. at 475 n. 14, 96 S.Ct. at 1642 n. 14
 
 
 [3]
 28 U.S.C. Sec. 1343(3) is the jurisdictional counterpart to 42 U.S.C. Sec. 1983. Lynch v. Household Finance Corp., 405 U.S. 538, 543-44, 92 S.Ct. 1113, 1117-18, 31 L.Ed.2d 424 (1972)
 
 
 [4]
 Lynch, supra, was quoting United States v. Price, 383 U.S. 787, 797, 86 S.Ct. 1152, 1158, 16 L.Ed.2d 267 (1966). Even in Price the quoted statement was dictum. The issue in Price was whether 18 U.S.C. Sec. 241 (1982), the criminal statute involving conspiracies to deprive a citizen of his constitutional rights, included rights protected by the fourteenth amendment. In holding that it did, the Supreme Court noted that both Sec. 241 and 18 U.S.C. Sec. 242 (1982) (a similar criminal statute lacking the conspiracy element) included rights or privileges secured by the Constitution or laws of the United States. The Court then stated: "Each includes, presumably, all of the Constitution and laws of the United States." (emphasis in original). 383 U.S. at 797, 86 S.Ct. at 1158
 
 
 [5]
 See also First National Bank of Omaha v. Marquette National Bank of Minneapolis, 636 F.2d 195, 198 (8th Cir.1980), cert. denied, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981); Chase v. McMasters, 573 F.2d 1011, 1017 (8th Cir.), cert. denied, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978)
 
 
 [6]
 While there has been continuous activity in the area of Commerce Clause litigation, Sec. 1983 was largely ignored for almost seventy years after its enactment. In Hague v. C.I.O., 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), the Supreme Court gave the first modern interpretation of Sec. 1983, holding that the right to assemble and distribute literature was within the protection of Sec. 1983 as a privilege or immunity secured by the Constitution. Hague, 307 U.S. at 512, 59 S.Ct. at 962. However, it was not until the Supreme Court's 1961 decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that Sec. 1983 became a significant source of litigation. See, e.g., Friedman, Constitutional Torts 3 (1983); Developments in the Law--Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1167-69 (1977)
 
 
 [7]
 As explained by Professor Moore, before 28 U.S.C. Sec. 1331 was amended:
 There remain some cases in which redress is sought against action taken under color of law in which the litigation must proceed under Sec. 1331 and the minimum amount in controversy must be shown. Actions against federal officers constitute one example.... Another example is to be seen in actions challenging legislation as violative of the Commerce Clause.
 
 
 [1]
 J. Moore, Federal Practice p 0.62(2.-2), at 666 n. 48 (2d ed. 1983) (citations omitted)
 The Federal Question Jurisdictional Amendments Act of 1980, effective as of December 1, 1980, eliminated the amount in controversy requirement for federal question jurisdiction. Pub.L. 96-486, 94 Stat. 2369.
 
 
 [8]
 See Poirier v. Hodges, 445 F.Supp. 838, 842 (M.D.Fla.1978) (contract clause claim is not a right redressable under Sec. 1983)
 
 
 [9]
 "The Congress shall have Power ... to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I Sec. 8
 
 
 [10]
 The "dormant" Commerce Clause doctrine which has evolved from the specific grant of power contained in the Commerce Clause, provides that states may not enact regulations which unduly burden interstate commerce even when Congress has failed to exercise its power to establish a uniform national regulation in the particular area
 
 
 [11]
 That federal economic regulation under the Commerce Clause is distinct from the protection of constitutional rights is made clear in the extensive law review article, Section 1983 and Federalism, supra note 6, 90 Harv.L.Rev. at 1166-67
 
 
 [12]
 This Court's earlier opinion in Consolidated Freightways v. Kassel, 612 F.2d at 1070, also emphasized the national interest in unburdened interstate commerce. Judge Heaney, speaking for the Court, stated that when balancing conflicting state and federal claims, "national interests must prevail." (emphasis added)
 
 
 [13]
 The issue in Garrity, supra, concerned the privilege against self-incrimination, not interstate commerce
 
 
 [14]
 In Western Union the Court stated that the regulation of interstate commerce "is not within the province of state legislation, but within that of national legislation." 216 U.S. at 21, 30 S.Ct. at 195. And in Crutcher the Court said that the regulation of interstate commerce "is a subject which belongs to the jurisdiction of the national and not the state legislature." 141 U.S. at 57, 11 S.Ct. at 853
 
 
 [15]
 See generally Section 1983 and Federalism, supra note 6, 90 Harv.L.Rev. at 1153-56; Monroe v. Pape, 365 U.S. 167, 171-74, 81 S.Ct. 473, 475-76, 5 L.Ed.2d 492 (1961); Consolidated Freightways v. Kassel, 556 F.Supp. at 748
 
 
 [16]
 That Sec. 1983 was not intended to provide a means of enforcing Constitutional provisions which allocate power between the state and federal governments is demonstrated by the following statement of Rep. Shellabarger, a leading proponent of the 1871 Act:
 Most of the provisions of the Constitution which restrain and directly relate to the States, such as those in tenth section of first article, that "no State shall make a treaty," "grant letters of marque", "coin money," "emit bills of credit," & c., relate to the divisions of the political powers of the State and General Governments. They do not relate directly to the rights of persons within the States and as between the States and such persons therein. These prohibitions upon the political powers of the States are all of such nature that they can be, and even have been, when the occasion arose, enforced by the courts of the United States declaring void all State acts of encroachment on Federal powers. Thus, and thus sufficiently, has the United States "enforced" these provisions of the Constitution. But there are some that are not of this class. These are where the court secures the rights or liabilities of persons within the States, as between such persons and the States.
 Cong.Globe, 42d Cong., 1st Sess., App. 69 (1871). As the district court opinion stated, the implication of Rep. Shellabarger's statement is that Sec. 1983 was enacted to provide a remedy for the latter category of constitutional violations he mentions, and not the former. Consolidated Freightways, 556 F.Supp. at 748.
 
 
 [17]
 Consolidated argues that because Iowa's statutory ban on long trucks was ultimately found to violate the Commerce Clause, it follows that the Iowa legislature lacked the authority to pass such a statute and, in so doing, violated due process. The district court viewed this as a bootstrapping argument, and we agree with its conclusion. The question of whether the Iowa statute violates the due process clause of the fourteenth amendment is distinct from the question of whether it violates the Commerce Clause. The fact that a statute is found to place an unconstitutional burden on interstate commerce does not transform the enactment of the statute into a due process violation