466

Hillsborough
No. 86-088

PRIVATE TRUCK COUNCIL OF AMERICA, INC. *& a.*

v.

THE STATE OF NEW HAMPSHIRE *& a.*

August 12, 1986

*Richard A. Allen*, of Washington, D.C., and *Sullivan, Gregg & Horton*, of Nashua *(Richard A. Allen & a.* on the briefs, and *Mr. Allen* orally), for the plaintiffs.

*Stephen E. Merrill*, attorney general *(Ronald F. Rodgers*, senior assistant attorney general, on the brief and orally), for the State and the defendant State officials.

JOHNSON, J. In this interlocutory transfer without ruling, the plaintiffs challenge the constitutionality of former RSA 260:53 (*repealed by* Laws 1985, 383:2, effective July 1, 1985) in an action by and on behalf of various out-of-state motor carriers. The plaintiffs contend that the statute violated both the commerce clause and the privileges and immunities clause of the United States Constitution because it discriminated against out-of-state businesses by imposing highway use permit fees on certain foreign-registered motor vehicles. The plaintiffs seek refunds of all taxes imposed pursuant to RSA 260:53, attorney's fees, and injunctive relief. We hold that the provisions of former RSA 260:53 violated the commerce clause, but that the plaintiffs are entitled only to refunds of taxes paid that are contained in an escrow fund established in the course of this litigation.

From December 31, 1982, until July 1, 1985, pursuant to former RSA 260:53, taxes and fees were imposed on motor carriers whose vehicles were registered in nine other States: Colorado, Nevada, New Mexico, New York, Ohio, Oregon, Pennsylvania, Vermont, and Wyoming. *See* N.H. ADMIN. RULES, Saf-M 307.07, 308.01. These highway use permit fees were imposed on vehicles registered in States that imposed "third structure taxes" on motor carriers, including those registered in New Hampshire, which New Hampshire does not impose. "Third structure taxes" are taxes assessed in addition to registration and fuel taxes. Vermont carriers were required to pay a $50 annual fee for each motor truck or tractor trailer unit, and a $25 annual fee for each motor bus fleet plus $2 per bus or, alternatively, to purchase temporary authorizations good for seven days at $50 per motor truck and tractor trailer unit and $15 for motor buses. *See* N.H. ADMIN. RULES, Saf-M 307.07, 307.22, 307.01. Carriers operating vehicles registered in the remaining eight States were required to purchase highway use permits at $120 or, alternatively, temporary authorizations good for three days at $10 per vehicle. *See* N.H. ADMIN. RULES, Saf-M 308.01, 302.06.

The plaintiffs, Private Truck Council and two out-of-state motor carriers, filed a bill in equity on December 27, 1984. On January 10, 1985, the parties filed and the Superior Court (*Dalianis*, J.) approved an agreement to hold in escrow all of the taxes collected pursuant to former RSA 260:53 by carriers in eight of the States. In March 1985, the agreement was amended to include taxes paid by Vermont carriers. Taxes paid by the plaintiffs between December 31, 1982, and the establishment of the escrow fund were not held in escrow. Effective in July 1, 1985, the tax was repealed. Laws 1985, 383:2.

In a pretrial agreement, the parties agreed that the court "should certify as a plaintiff class all motor carriers whose vehicles are registered in states against which New Hampshire retaliates." The court "approved" the agreement in an order dated March 26, 1985. The court's order met none of the formal requirements of Superior Court Rule 27-A, however, and hence we do not regard the plaintiffs as having been certified as a class.

On September 6, 1985, the plaintiffs moved for summary judgment and then on December 7, 1985, moved for interlocutory transfer without ruling. The transfer was approved on February 19, 1986, and on April 23, 1986, we accepted the transfer to resolve the questions of law presented in the plaintiffs' summary judgment motion. The transferred questions are as follows:

"1. Whether it is required to be held, as a matter of law without the necessity of any factual hearing, that [RSA 260:53] discriminated against interstate commerce during the period it was in effect in violation of the Commerce Clause and Privileges and Immunities Clause of the United States Constitution because, as defendants have admitted, the 'retaliatory' taxes and fees imposed by that section applied only to motor carriers operating in New Hampshire whose vehicles were registered in nine other States and did not apply to carriers whose vehicles were registered in New Hampshire . . . ;

2. Whether [RSA 260:50], the Road Toll Refund Statute, applies to refunds of the retaliatory taxes involved in this case . . . ; [and]

3. Whether plaintiffs are also entitled to refunds under the equitable principles of restitution and unjust enrichment, and whether a 'passing-on' defense may be asserted to bar such refunds . . . ."

(Footnote omitted.) We consider these questions in turn.

I. *Constitutionality of Former RSA 260:53*

■■ The plaintiffs contend that former RSA 260:53 violated the commerce clause of the United States Constitution, art. I, § 8, cl. 3, because it discriminated against interstate commerce and because the taxes it authorized were not fairly related to services provided to out-of-state vehicles by New Hampshire. The fundamental principle underlying the commerce clause as it relates to taxation is that "[n]o State . . . may 'impose a tax which discrimi-

nates against interstate commerce . . . by providing a direct commercial advantage to local business.'" *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 329 (1977). An analysis under the commerce clause must balance "the national interest in free and open trade and the legitimate interest of the individual States in exercising their taxing powers." *Id.*

■ The United States Supreme Court has set forth a four-part test which a tax must meet if it is to survive an analysis under the commerce clause. The tax must have a substantial nexus with the State, must be fairly apportioned, must not discriminate against interstate commerce, and must not be unrelated to services provided by the State. *Maryland v. Louisiana*, 451 U.S. 725, 754 (1981). Plaintiffs in this case assert that the taxes imposed by former RSA 260:53 must fail under the latter two prongs of the test.

We first address the defendants' contention that the constitutionality of former RSA 260:53 cannot be decided without further factual findings concerning the actual effect of the tax on interstate commerce, including findings on the cost per mile borne by out-of-state as opposed to in-state vehicles, and the amount of taxes used to pay for the upkeep of New Hampshire roads and the enforcement of other motor vehicle statutes. Moreover, the defendants claim that the plaintiffs must prove that they, and not their customers, bore the economic burden of the tax. *See Cagan's, Inc. v. Dep't of Rev. Admin.*, 128 N.H. 180, 512 A.2d 411 (1986).

■ A factual record delineating the greater burden on out-of-state vehicles is necessary only if the statute does not discriminate on its face. *Cf. Interstate Busses Corp. v. Blodgett*, 276 U.S. 245, 251 (1928); *American Trucking Associations, Inc. v. Quinn*, 437 A.2d 623, 626 (Me. 1981). The statute challenged here imposes taxes on foreign-registered vehicles that are not imposed on New Hampshire-registered vehicles, and therefore we conclude that the statute discriminates on its face against interstate commerce. *Cf. Private Truck Council v. Secretary of State*, 503 A.2d 214, 217 (Me.), *cert. denied*, 106 S. Ct. 1997 (1986); *American Trucking Ass'ns, Inc. v. Conway*, 508 A.2d 405, 407 (Vt. 1986). *But see American Trucking Associations, Inc. v. Scheiner*, 509 A.2d 838 (Pa. 1986). Knowledge of the *amount* of discrimination imposed by a statute is not necessary to decide that it discriminates. "We need not know how unequal the tax is before concluding that it unconstitutionally discriminates." *Maryland v. Louisiana, supra* at 760. Furthermore, evidence of economic burden is unnecessary in this case to enable us to decide whether a right to recover a refund exists, because our holding makes it unnecessary to reach that issue.

■■ We must examine the tax in light of its actual effect when considered with the State's entire taxation scheme. *Maryland v. Louisiana*, 451 U.S. at 756. Although we have concluded that the tax on its face is discriminatory, the statute may nevertheless pass constitutional muster if it is compensatory. *See id.* at 758. The concept of a compensatory tax "first requires identification of the burden for which the State is attempting to compensate." *Id.* The defendants appear to argue that New Hampshire's registration fees are the taxes for which former RSA 260:53 attempted to compensate. Registration fees for resident vehicles cannot be compensated for by taxes imposed against out-of-state vehicles, because all vehicles pay registration fees in their own States, which entitle them to operate in all States with registration reciprocity. *American Trucking Associations, Inc. v. Quinn, supra* at 626–27; *American Trucking Ass'ns, Inc. v. Conway, supra* at 407. New Hampshire's acceptance of registration reciprocity, *see* RSA 261:44, constituted a waiver of its right to impose registration fees on foreign-registered vehicles. The retaliatory taxes at issue here therefore cannot be regarded as compensatory.

■ Furthermore, the legislature's evident purpose in enacting former RSA 260:53 was to provide an incentive for States to repeal third structure taxes that are not imposed by New Hampshire. The imposition of a "retaliatory" tax of this nature, however, is not a legitimate means by which to alleviate another State's alleged burden on interstate commerce. If another State is unconstitutionally burdening interstate commerce, the remedy is an action under the commerce clause. *See A & P Tea Co. v. Cottrell*, 424 U.S. 366, 379–80 (1976). A State may not seek to correct discrimination in interstate commerce by retaliating against its source; "to prevent this was one of the chief ends sought to be accomplished by the adoption of the Constitution." *Travis v. Yale & Towne Mfg. Co.*, 252 U.S. 60, 82 (1920).

■ We hold that former RSA 260:53 discriminated against interstate commerce and, therefore, that the plaintiffs' challenge to the constitutionality of the statute under the commerce clause must be upheld. Although we otherwise need not reach the issue of whether the statute also violated the privileges and immunities clause of the United States Constitution, we will consider the plaintiffs' argument in light of their refund claim under 42 U.S.C. § 1983 (1982).

■■ The privileges and immunities clause provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immuni-

ties of Citizens in the several States." U.S. CONST. art. IV, § 2, cl. 1. It is well-settled that corporations are not citizens within the meaning of the privileges and immunities clause. *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 177 (1869), *overruled on other grounds*, *United States v. Underwriters Assn.*, 322 U.S. 533 (1944); *see also Western & Southern L. I. Co. v. Bd. of Equalization*, 451 U.S. 648, 656 (1981). The plaintiffs in this case are two corporations and one incorporated association representing numerous companies acting as private carriers. The privileges and immunities clause applies only to natural persons and, therefore, the plaintiffs cannot invoke its protection. *See Hemphill v. Orloff*, 277 U.S. 537, 550 (1928); *American Trucking Associations, Inc. v. Larson*, 683 F.2d 787, 790 (3d Cir.), *cert. denied*, 459 U.S. 1036 (1982).

## II. *Refunds*

The escrow agreement of the parties provides that the "escrow will provide a ready fund from which refunds can easily be paid . . . ." In that the agreement does not state the effective date of the establishment of the escrow fund, but does state that the fund will "facilitate refunds of the fees collected during the pendency of this case," we read the agreement to provide that taxes paid since the plaintiffs brought their action will be held in escrow. The defendants do not contest that taxes paid by the plaintiffs between the time that the escrow fund was established and July 1, 1985, are recoverable by the plaintiffs.

The plaintiffs assert that they are also entitled to recover nearly three million dollars in taxes paid between December 31, 1982, and the date that the escrow fund was established. The plaintiffs base their claims to refunds on three alternative grounds: (1) RSA 260:50, "Refunds of Tolls Erroneously or Illegally Collected;" (2) a common law right to refunds based on principles of restitution and unjust enrichment; and (3) 42 U.S.C. § 1983 (1982), which creates a remedy for violations of constitutional rights under color of state law. The plaintiffs also claim entitlement to attorney's fees, either under 42 U.S.C. § 1988 (1982) or under a common law right to recover from a common fund in a class action. We hold that the plaintiffs are not entitled to refunds under any of these theories, and are not entitled to attorney's fees. We consider each theory in turn.

### A. *Statutory Right to Refunds*

RSA 260:50, I, states:

> "If the director decides that any road tolls or interest or penalties have been erroneously or illegally collected from

any distributor, such distributor shall be entitled to a refund thereof . . . ."

The plaintiffs conclude that because taxes have been collected from them pursuant to an unconstitutional statute, former RSA 260:53, they are entitled to refunds under the above refund statute. We disagree.

■■ The starting point for determining legislative intent is the language of the statute itself. *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980). RSA 259:21 defines "distributor" as

"any person, wherever resident or located, who imports or causes to be imported fuel or motor fuel into the state, and also any person who refines, distills, prepares, blends, manufactures or compounds fuels within this state."

This language clearly indicates that the refund statute applies only to road tolls collected from distributors of motor fuel, and not to taxes collected from carriers.

■■ The plaintiffs contend that "it would be plainly unreasonable" to limit refunds of road tolls collected under RSA chapter 260 to distributors of motor fuel because, at the time RSA 260:50 was enacted, the only road tolls collected under RSA chapter 260 were motor fuel taxes. Although we have stated that we will not give force to the "literal meaning" of particular words in a statute if such meaning is inconsistent with the statute's general purpose or a well-settled rule of law, *see Blais v. Town of Goffstown*, 119 N.H. 613, 616, 406 A.2d 295, 297 (1979), we perceive no such inconsistency here. Plain and unambiguous language in a statute does not require us to look beyond the statute itself for indications of legislative intent, particularly where the result does not conflict with any statutory purpose.

### B. *Common Law Right to Refunds*

The plaintiffs next assert a right to refunds under equitable principles of restitution and unjust enrichment. The defendants argue that (1) the plaintiffs must prove that they, as opposed to their customers, actually bore the economic burden of the tax; (2) a common law theory of recovery requires the plaintiffs to prove that the taxes were paid involuntarily; and (3) sovereign immunity bars a common law action for refunds against the State.

■ In order to recover under a common law refund theory, the plaintiffs must prove that they paid the tax involuntarily, *see*

*Ward v. Love County,* 253 U.S. 17, 22 (1920), and we find that this has not been demonstrated. We thus need not reach the issue whether parties seeking to recover refunds in these circumstances must prove that they bore the economic burden of the tax. Further, we do not reach the question of sovereign immunity, although we note that policy considerations inherent in the doctrine require that sovereign immunity not bar a common law claim for refunds when the State has been given fair notice that the taxpayer protested payment of the tax. Likewise, we hold today that policy considerations under the common law require that the State be given fair warning of a taxpayer's protest.

The plaintiffs urge us to accept the "implied duress" doctrine, which holds that tax payments are deemed paid involuntarily when failure to pay would have subjected the taxpayer to criminal penalties. The doctrine is based on the concept that the penalty exacted for nonpayment of a tax may be so severe that it constitutes coercion and duress. *Broward County v. Mattel,* 397 So. 2d 457, 460 (Fla. Dist. Ct. App. 1981). In this case, failure to comply with former RSA 260:53 constituted a misdemeanor. Penalties imposed upon persons convicted of misdemeanors include imprisonment for up to one year, and payment of a fine of up to one thousand dollars for an individual and up to ten thousand dollars for a corporation. RSA 651:2, II, IV.

We would have no trouble accepting the plaintiffs' argument had the plaintiffs' only choices been either payment of the tax or submitting to the penalties imposed upon conviction of a misdemeanor. Simple alternatives, however, were open to the plaintiffs. At the time that the tax was initially imposed, the plaintiffs could have filed a declaratory judgment action, RSA 491:22, or notified the State that they were paying the taxes "under protest." *Cf. Matthews v. Rodgers,* 284 U.S. 521, 526–27 (1932).

We believe that policy considerations militate against adoption of an "implied duress" doctrine broad enough to ground relief in this case. The sovereign's power to tax rests on the understanding that the funds are used for the public. In order effectively to serve the public, the State must be able to allocate revenues collected under its tax laws without the risk of liability to taxpayers who comply with the laws without protest and later demand refunds. The plaintiffs contend that the State in this case could not have relied on the revenues from taxes collected pursuant to former RSA 260:53 because the statute's sole purpose was to induce other States to eliminate third structure taxes. Once these taxes were eliminated, the plaintiffs point out, New Hampshire's revenue from those States' carriers would have disappeared. Although we agree

that the State may have hoped that it would gain no revenues from former RSA 260:53 because other States would repeal their third structure taxes, the State nevertheless did collect taxes from the plaintiffs and used those funds for the public good. Fairness requires that we disallow recovery of those funds unless fair notice was given to the State; in this case, the plaintiffs gave the State fair notice on the date that they brought this action, which corresponds to the effective date of the establishment of the escrow fund.

C. *42 U.S.C. § 1983*

The plaintiffs' final theory underlying their refund claim is based on 42 U.S.C. § 1983 (1982), which provides:

> "Every person who, under color of any statute . . . of any State . . . , subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The purposes underlying the original enactment of section 1983 were to override discriminatory state laws, to provide a remedy where state law was inadequate, and to provide a federal remedy where the state remedy, although adequate in theory, was unavailable in practice. *Monroe v. Pape*, 365 U.S. 167, 173–74 (1961), *overruled on other grounds, Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Although the plaintiffs argue that section 1983 provides redress for "any" violation of constitutional or federal statutory rights, section 1983 has not been so construed. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 615–20 (1979) (supremacy clause violation not redressable under § 1983); *Poirier v. Hodges*, 445 F. Supp. 838, 842 (M.D. Fla. 1978) (contract clause violation not redressable under § 1983).

We do not believe that the purposes of section 1983 would be furthered by a holding that a violation of the commerce clause is redressable through an action under that statute. The United States Court of Appeals for the Eighth Circuit has held that a violation of the commerce clause is not a basis for applying section 1983. *Consol. Freightways Corp. of Del. v. Kassel*, 730 F.2d 1139 (8th Cir.), *cert. denied*, 105 S. Ct. 126 (1984); *see also Private Truck Council v. Secretary of State*, 503 A.2d at 220–22. *But see Kennecott Corp. v. Smith*, 637 F.2d 181, 186 n.5 (3d Cir. 1980); *Confederated Salish & Kootenai Tribes v. Moe*, 392 F. Supp. 1297, 1304–05 (D. Mont. 1974), *aff'd on other grounds*, 425 U.S. 463 (1976). The Eighth Circuit based its

holding on the ground that the commerce clause does not establish individual rights, but rather allocates power between State and federal governments. *Kassel, supra* at 1144.

Both the commerce clause and the supremacy clause "limit the power of a state to interfere with areas of national concern. Just as the Supremacy Clause does not secure rights within the meaning of § 1983, neither does the Commerce Clause." *Kassel,* 730 F.2d at 1144 (footnote omitted). "The Commerce Clause created no rights or privileges; it established no law other than the law of jurisdiction to regulate those engaged in interstate or foreign commerce." *Id.* at 1145 (quoting B. GAVIT, COMMERCE CLAUSE 32–33 (1932)). The Eighth Circuit concluded that "[a]lthough individuals are oftentimes benefited through the indirect protection resulting from the limitations placed on the states through the dormant Commerce Clause doctrine, such benefit is not the same thing as a 'right' secured by the Constitution within the meaning of § 1983." *Id.*

We agree that a commerce clause violation is not redressable under section 1983. We therefore deny the plaintiffs' claims for refunds of taxes paid before the establishment of the escrow fund. The plaintiffs' claims for attorney's fees also must fail. The plaintiffs have not stated a cause of action under section 1983, and thus cannot recover attorney's fees under 42 U.S.C. § 1988 (1982), which provides for attorney's fees in, *inter alia,* section 1983 actions. Furthermore, the plaintiffs have not demonstrated a common law right to attorney's fees under the theory of a "common fund" for the benefit of a class because, as we have indicated, this action has not been properly certified as a class action. Moreover, the plaintiffs have not demonstrated any bad faith on the part of the State. *See Harkeem v. Adams,* 117 N.H. 687, 691, 377 A.2d 617, 619 (1977).

III. *Injunctive Relief*

Finally, the plaintiffs request injunctive relief. In view of the repeal of former RSA 260:53, the plaintiffs no longer seek an injunction against the collection of taxes under that statute. Instead, they seek an injunction against "the imposition or collection of retaliatory taxes pursuant to any authority." This request rests upon purely speculative grounds and, moreover, raises serious issues regarding the separation of powers. We are confident that the State will abide by the consequences of this decision, and we see no reason to grant the plaintiffs' request.

In summary, we hold that former RSA 260:53 violated the commerce clause by unlawfully discriminating against interstate commerce. The plaintiffs are thus entitled to recovery of all of the funds

478

held in escrow. They are not entitled, however, to recovery of any taxes paid before the establishment of the escrow fund, nor do we grant their request for attorney's fees. We therefore answer question (1) in the affirmative with respect to the commerce clause, and in the negative with respect to the privileges and immunities clause, and questions (2) and (3) in the negative.

*Remanded.*

All concurred.