MARK E. DENNIS, DOING BUSINESS AS DENNIS TRUCKING, APPELLANT AND CROSS-APPELLEE, V. STATE OF NEBRASKA ET AL., APPELLEES AND CROSS-APPELLANTS.

451 N.W.2d 676

Filed February 16, 1990.   No. 88-205.

Richard A. Allen and Richard P. Schweitzer, of Zuckert, Scoutt & Rasenberger, and Richard L. Spangler, of Woods, Aitken, Smith, Greer, Overcash & Spangler, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The plaintiff, Mark E. Dennis, doing business as Dennis Trucking, commenced this action to obtain a judgment declaring taxes imposed pursuant to Neb. Rev. Stat. §§ 60-305.02 and 60-305.03 (Reissue 1984) to be unconstitutional and enjoining the defendants from assessing or collecting such taxes, and to recover the plaintiff's attorney fees and costs of the action. Named as defendants were the State of Nebraska; Holly Jensen, individually and as director of the Nebraska Department of Motor Vehicles; Lou Lamberty, individually and as director of the Nebraska Department of Roads; and Kay Orr, individually and as Nebraska Treasurer.

The plaintiff alleged that the taxes and fees imposed under §§ 60-305.02 and 60-305.03 were an unlawful burden on interstate commerce in violation of U.S. Const. art. I, § 8, cl. 3; constituted a denial of the plaintiff's privileges and immunities in violation of U.S. Const. art. IV, § 2, cl. 1; constituted a grant by the Legislature of special and exclusive privileges, immunities, and franchises in violation of Neb. Const. art. III, § 18; and violated 42 U.S.C. § 1983 (1982) by depriving the plaintiff of rights secured by the U.S. Constitution.

After a trial to the court on stipulated facts, the trial court held that the statutes were in violation of the commerce clause, U.S. Const. art. I, § 8, cl. 3, and permanently enjoined the defendants from assessing, levying, or collecting taxes or fees pursuant to §§ 60-305.02 and 60-305.03. The trial court dismissed the remaining counts, holding that the plaintiff had

failed to prove he was entitled to judgment under U.S. Const. art. IV, § 2, cl. 1; Neb. Const. art. III, § 18; or 42 U.S.C. § 1983.

The order of the trial court further provided:

> The plaintiff and his attorneys are entitled under the Equitable Fund Doctrine to payment of their expenses and reasonable fees. The Court shall determine the amount of any such expenses and fees by subsequent order following the submission of documentation in support thereof and a showing regarding any fund available for payment of said fees and expenses.

The plaintiff's motion for new trial, which was overruled, alleged that the common fund from which his attorneys' costs and fees may be paid was the total amount of taxes available for refunds pursuant to the court's order.

The plaintiff has appealed, contending that the district court erred in denying his claims under 42 U.S.C. § 1983 and in denying his claim that the common fund from which litigation costs and attorney fees may be paid consists of the total amount of taxes subject to refund as a result of the court's holding. The defendants have cross-appealed, claiming that the trial court erred in finding that the plaintiff and his attorneys were entitled under the equitable fund doctrine to payment of their expenses and reasonable fees. The defendants have not appealed the district court's finding that the statutes were in violation of the commerce clause, and there is no issue in that regard on this appeal. Both sections have since been amended. See §§ 60-305.02 and 60-305.03 (Reissue 1988).

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982), provides that attorney fees may be

awarded to the prevailing party, other than the United States, in any action to enforce a provision of § 1983. Furthermore, a party who prevails on a ground other than § 1983 is entitled to attorney fees under § 1988 if § 1983 would have been an appropriate basis for relief. *Consol. Freightways Corp. of Del. v. Kassel*, 730 F.2d 1139 (8th Cir. 1984), *cert. denied* 469 U.S. 834, 105 S. Ct. 126, 83 L. Ed. 2d 68; *J & J Anderson, Inc. v. Town of Erie*, 767 F.2d 1469 (10th Cir. 1985); *Private Truck Council v. Secretary of State*, 503 A.2d 214 (Me. 1986), *cert. denied* 476 U.S. 1129, 106 S. Ct. 1997, 90 L. Ed. 2d 677.

The issues presented by the plaintiff's first assignment of error are, therefore, (1) whether a violation of the commerce clause constitutes a cause of action under § 1983 and (2) whether § 1983 would have been an appropriate basis for relief in this case.

Despite the broad language of § 1983 and the fact that there appears to be a division of authority on the question as to whether there is a cause of action under § 1983 for violations of the commerce clause, we believe the better reasoned cases hold that there is no cause of action under § 1983 for violations of the commerce clause. The leading authority appears to be *Consol. Freightways Corp. of Del. v. Kassel, supra,* in which the court held that "the Commerce Clause does not establish individual rights against government, but instead allocates power between the state and federal governments." *Id.* at 1144. Cases involving the supremacy clause and reaching the same result are *Golden State Transit Corp. v. City of Los Angeles*, _____ U.S. _____, 110 S. Ct. 444, 107 L. Ed. 2d 420 (1989) (the supremacy clause, of its own force, does not create rights enforceable under § 1983); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S. Ct. 1905, 60 L. Ed. 2d 508 (1979); *White Mountain Apache Tribe v. Williams*, 810 F.2d 844 (9th Cir. 1987) (preemption of state law under the supremacy clause does not give rise to a cause of action under § 1983); *Gould, Inc. v. Wisconsin Dept. of Industry, Labor*, 750 F.2d 608 (7th Cir. 1984), *aff'd* 475 U.S. 282, 106 S. Ct. 1057, 89 L. Ed. 2d 223 (1986) (action brought by corporation alleging that state statutes were preempted by federal labor law, in violation of the supremacy clause, was not cognizable under

§ 1983); and *Maryland Pest Control v. Montgomery County, Md.*, 884 F.2d 160 (4th Cir. 1989) (the supremacy clause does not secure rights within the meaning of § 1983 so as to entitle a successful litigant to attorney fees pursuant to § 1988).

In *Consol. Freightways Corp. of Del. v. Kassel, supra*, Consolidated Freightways sought attorney fees under 42 U.S.C. § 1983 after Iowa's statute restricting Consolidated's use of 65-foot twin trailers was declared invalid as a violation of the commerce clause. The U.S. Court of Appeals for the Eighth Circuit held that a violation of the commerce clause did not constitute a claim under § 1983.

> Iowa contends that the Commerce Clause does not establish individual rights against government, but instead allocates power between the state and federal governments. On the basis of the nature of the Commerce power as defined by the case law . . . we must agree with the interpretation of the Commerce Clause as an allocating provision, not one that secures rights cognizable under § 1983.

> The Commerce Clause grants to Congress the power to regulate interstate commerce. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). That grant of power has been held to imply a limitation upon the states. [Citations omitted.]

> It is clear from the language employed by the Supreme Court in Commerce Clause cases that the Commerce Clause deals with the relationship between national and state interests, not the protection of individual rights. These decisions are replete with references to the *national* or *federal interest* in preventing the burdensome state regulation of interstate commerce. [Citations omitted.]

> In the Supreme Court's opinion in this very case the emphasis is on the role of the Commerce Clause in preventing state regulation from "trespass[ing] upon *national interests.*" *Kassel v. Consolidated Freightways*, 450 U.S. 662, 669, 101 S.Ct. 1309, 1315, 67 L.Ed.2d 580 (1981) (emphasis added). In striking down the Iowa truck-length limitations, the Court stated that Iowa's "regulations impair significantly the *federal interest* in

efficient and safe interstate transportation . . . ." *Id.* at 671, 101 S.Ct. at 1316 (emphasis added). No where does the Court refer to the impairment, infringement, or protection of the interests or rights of the individual. Throughout the Commerce Clause cases the emphasis is on the relationship between conflicting federal and state interests, not the relationship between the individual and the state. [Citation omitted.]

To support its theory that the Commerce Clause secures rights cognizable under § 1983, Consolidated has cited several Supreme Court cases which refer to a Constitutional "right" to engage in interstate commerce. . . . Although these cases do refer to engaging in interstate commerce as a constitutional right, such cases were not dealing with the question of whether the Commerce Clause secures individual rights within the meaning of § 1983. In *Garrity* [v. *New Jersey,* 385 U.S. 493, 87 S. Ct. 616, 17 L. Ed. 2d 562 (1967),] the reference to interstate commerce was mere dictum, and in both *Western Union* [*Tel. Co. v. Kansas,* 216 U.S. 1, 30 S. Ct. 190, 54 L. Ed. 355 (1910),] and *Crutcher* [v. *Kentucky,* 141 U.S. 47, 11 S. Ct. 851, 35 L. Ed. 649 (1891)], the focus of the Court's opinions was on the separation of powers between the national and state legislatures. Despite these references to a right to engage in interstate commerce, we agree with the district court that the Commerce Clause was adopted, and the dormant Commerce Clause doctrine evolved, not to protect individual rights, but to further the national interest in an efficient economy. [Citation omitted.]

Although individuals are oftentimes benefited through the indirect protection resulting from the limitations placed on the states through the dormant Commerce Clause doctrine, such benefit is not the same thing as a "right" secured by the Constitution within the meaning of § 1983.

(Emphasis in original.) *Consol. Freightways Corp. of Del. v. Kassel,* 730 F.2d 1139, 1144-45 (8th Cir. 1984). The court concluded:

In *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5

L.Ed.2d 492 (1961), Justice Douglas discerned three purposes underlying the original enactment of § 1983: (1) to override discriminatory state laws; (2) to provide a remedy where state law was inadequate; and (3) to provide a federal remedy where the state remedy, although adequate in theory, was not available in practice. [Citation omitted.] To hold that an alleged violation of the Commerce Clause constitutes an action cognizable under § 1983 would fail to serve any of these purposes and would be an unwarranted extension of the Civil Rights Act. We do not believe that such a cause of action was within the intent of the Congress that enacted the civil rights statutes, nor do we believe that such an interpretation of the scope of § 1983 is mandated by either the language of § 1983 or the nature of the Commerce Clause. We therefore hold that § 1983 does not provide a remedy for a dormant Commerce Clause claim.

730 F.2d at 1146-47.

In *Kraft v. Jacka*, 872 F.2d 862 (9th Cir. 1989), the plaintiffs brought a § 1983 action against members of the Nevada Gaming Control Board after the board refused to extend further licensing to the plaintiffs when their 1-year limited gaming licenses expired. The plaintiffs alleged their civil rights had been violated because they had been deprived of protected property and liberty interests without due process of law.

The U.S. Court of Appeals for the Ninth Circuit held that the corporate plaintiffs had no protected property interest in further licensing and could not state a claim under § 1983 for an alleged violation of the commerce clause. The plaintiffs also failed to establish a protected interest in reputation. Since they had no protected property or liberty interests, the plaintiffs could not show that their due process rights had been violated. The court further held that the denial of the license application, based partly on individual plaintiff Kraft's personal association with an unsuitable person, did not violate Kraft's free association right.

The plaintiffs in *Kraft* also alleged that the board violated their constitutional rights by issuing a stop order as to an out-of-state sale of corporate securities, contending that the

board's action deprived them of corporate property in violation of the commerce clause and, thus, in violation of § 1983. The court rejected this contention.

> The Commerce Clause places restraints upon the power of the states. *Philadelphia v. New Jersey*, 437 U.S. 617, 623, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475 (1978). It divides power between the states and the federal government. We have previously stated that "§ 1983 was not intended to encompass those constitutional provisions which allocate power between the state and federal government." *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 848 (9th Cir.1984) (Supremacy Clause, which establishes federal-state priorities, does not secure individual rights under § 1983), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987); *see also Consolidated Freightways Corp. v. Kassel*, 730 F.2d 1139, 1144 (8th Cir.1984) (The Commerce Clause is "an allocating provision, not one that secures rights cognizable under § 1983."), *cert. denied*, 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984). Thus, assuming that the Board's actions in any way implicated the Commerce Clause, the plaintiffs cannot state a cause of action under § 1983 for violation of the Clause.

872 F.2d at 869.

In *J & J Anderson v. Town of Erie*, 767 F.2d 1469 (10th Cir. 1985), the board of trustees of the town of Erie, Colorado, enacted an ordinance prohibiting any ultralight aircraft from landing or taking off within the town. The ordinance was enacted in response to noise complaints. The plaintiffs, an ultralight aircraft company and three pilots, brought a § 1983 action alleging that the ordinance denied them their rights to equal protection and constituted a "taking" of their rights to carry on a lawful occupation, to own and enjoy private property, and of freedom of transit through navigable airspace pursuant to 49 U.S.C. app. § 1304 (1982), in violation of the just compensation clause of the fifth amendment.

Although the issues between the parties were ultimately resolved by the repeal of the ordinance, the plaintiffs requested costs and attorney fees pursuant to 42 U.S.C. § 1988. The

plaintiffs argued that they would have substantially prevailed on their § 1983 claim because certain federal regulations preempted the effect of the ordinance. The U.S. Court of Appeals for the Tenth Circuit stated:

> The Commerce Clause does, by implication, limit state and municipal authority to enact laws regulating interstate commerce. . . . However, it has been recognized that when a compelling public interest, such as community safety, is involved, the states and municipalities have a legitimate local concern which may be regulated by a zoning ordinance, notwithstanding the fact that such ordinance affects interstate commerce. . . .
>
> The Commerce Clause of the Constitution, Art. 1, § 8, cl. 3, is a limitation upon the power of the states to regulate commerce. However, state regulations touching upon safety may be valid if they do not place a substantial burden on interstate commerce. . . . In any event, the Commerce Clause deals with the relationship between national and state interests, and does not deal with the protection of individual rights. *Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981); *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978); *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959). The Commerce Clause does not secure rights cognizable under 42 U.S.C. § 1983 in that a Commerce Clause violation would not deprive an individual of any right, privilege, or immunity secured by the Constitution. *Consolidated Freightways Corp. of Delaware v. Kassel, supra*, 730 F.2d at 1144. Accordingly, the Court there held that the claim for attorney's fees pursuant to 42 U.S.C. § 1988 was not well taken.

767 F.2d at 1476. The court held:

> The Commerce Clause and the Supremacy Clause, although limiting the power of the states to interfere in areas of national concern, do not secure rights cognizable under § 1983. This section was enacted to insure a "right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted thereto."

> *Chapman v. Houston Welfare Rights Organization, supra*, 441 U.S. at 611, 99 S.Ct. at 913. Thus, § 1983 does not provide a remedy for claims resulting from violations of the Commerce Clause or the Supremacy Clause. It follows that an attorney's fee claim under § 1988, based on a § 1983 action involving an alleged violation of the Commerce Clause and the Supremacy Clause of the Constitution of the United States, can have no merit.

767 F.2d at 1476-77. The court further found that the plaintiffs could not have substantially prevailed on their § 1983 "taking" claim and were not entitled to attorney fees pursuant to § 1988.

In *Pesticide Public Policy v. Village of Wauconda*, 622 F. Supp. 423 (N.D. Ill. 1985), *aff'd* 826 F.2d 1068 (7th Cir. 1987), the plaintiff foundation challenged the validity of an ordinance regulating the use of pesticides in the defendant village. The foundation claimed that the village lacked authority to enact the ordinance and that the ordinance was preempted by Illinois law. The foundation further claimed that the ordinance denied foundation members due process and equal protection of law, constituted special legislation, and violated the commerce clause of the U.S. Constitution. The foundation also contended that the village was liable to individual foundation members for money damages pursuant to § 1983.

The court held that Illinois state law preempted the village's regulation of pesticides. The ordinance, therefore, was invalid under Illinois law.

As to § 1983 liability, the court held that the foundation did not have standing to sue for a declaration that its members were entitled to damages. The court found that, even if the foundation had standing, damages were not available as a matter of law under any of the foundation's § 1983 claims:

> Section 1983 was enacted to override discriminatory state laws and provide a remedy where state law was inadequate or unenforced. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The appellate courts reasoned that the function of both the Supremacy Clause and the Commerce Clause relates not to individual rights, but rather to the distribution of power between the state and federal governments. "Both the Supremacy and

Commerce Clauses 'limit the power of a state to interfere with areas of national concern.' " *Gould,* [*Inc. v. Wisconsin Dept. of Industry, Labor,* 750 F.2d 608, 616 (7th Cir. 1984), quoting *Consol. Freightways Corp. of Del. v. Kassel,* 730 F.2d 1139 (8th Cir. 1984)]. Thus, the Seventh Circuit declined to award attorneys' fees under 42 U.S.C. § 1988 based solely on Gould's success on its federal preemption claims, just as the Eighth Circuit refused to award attorneys' fees based on a Commerce Clause violation.

Therefore, even if the Foundation succeeded on its federal preemption claim, Count I, that would not entitle it to a declaration that the Village is liable for damages under Section 1983. Likewise, Count V of the complaint, which alleges that the Wauconda ordinance violates the Commerce Clause, does not provide a basis for damages under Section 1983.

622 F. Supp. at 435-36.

The court further held that the ordinance did not deprive foundation members of equal protection of the laws or violate the Illinois Constitution's prohibition against special legislation.

In *Private Truck Council v. Secretary of State,* 503 A.2d 214 (Me. 1986), a class action was brought by and on behalf of out-of-state truckers, contesting the validity of Maine's reciprocal truck taxes. An escrow fund comprised of all moneys collected under the disputed statute after January 2, 1985, was established during the pendency of the action. The trial court found that the statute was in violation of the commerce clause, but refused to order any refund of tax moneys "except to the extent that the plaintiff class had been protected by [the] escrow arrangement . . . ." *Id.* at 216. The trial court also denied the plaintiffs' request for allowance of attorney fees. The State appealed the trial court's action in declaring the statute unconstitutional. The plaintiffs also appealed, contending that their relief should not be limited to reimbursement of the funds in escrow and that they were entitled to recover attorney fees pursuant to § 1988 because they brought their action alternatively under § 1983.

In affirming the decision of the trial court, the Supreme Judicial Court of Maine held that the statute was in violation of the commerce clause and determined that the trial court properly ordered a refund of only the moneys held in escrow. The court further held that the plaintiffs were not entitled to recover attorney fees pursuant to § 1988.

> [P]laintiffs failed . . . to state a claim for relief cognizable under section 1983. We are convinced that Congress never intended to make a violation of the Commerce Clause actionable under that section of the Civil Rights Act. The Eighth Circuit has so held in a well-reasoned opinion in *Consolidated Freightways Corp. v. Kassel*, 730 F.2d 1139 (8th Cir.), *cert. denied*, [469 U.S. 834], 105 S.Ct. 126, 83 L.Ed.2d 68 (1984). Although the United States Supreme Court has not addressed this issue so far as the Commerce Clause is concerned, it did hold in *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), that the Supremacy Clause does not give rise to a claim of right "secured by the Constitution" within the meaning of 28 U.S.C. § 1343(3), a jurisdictional counterpart to section 1983. *Id.* at 615, 99 S.Ct. at 1914. *See also Gould, Inc. v. Wisconsin Department of Industry, Labor and Human Relations*, 750 F.2d 608, 616 (7th Cir. 1984) (Supremacy Clause violation does not present a cognizable claim under section 1983).

503 A.2d at 221. The court adopted the reasoning of *Consol. Freightways Corp. of Del. v. Kassel*, 730 F.2d 1139 (8th Cir. 1984), and stated:

> We find unpersuasive, as did the Eighth Circuit, two earlier federal cases stating terse holdings going the other way. *Kennecott Corp. v. Smith*, 637 F.2d 181, 186 n. 5 (3d Cir. 1980); *Confederated Salish and Kootenai Tribes v. Moe*, 392 F.Supp. 1297, 1304-05, (D.Mont. 1975), *aff'd*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). Neither of those cases analyzed the merits of extending section 1983 to encompass violations of the Commerce Clause, but rather merely relied on generalized statements in Supreme Court cases that did not involve the Commerce

Clause issue. *Consolidated Freightways*, 730 F.2d at 1142-43.

503 A.2d at 222.

In *Private Truck Council of America v. State*, 128 N.H. 466, 517 A.2d 1150 (1986), the New Hampshire Supreme Court held that a state statute imposing taxes and fees on motor carriers whose vehicles were registered in nine other states discriminated against interstate commerce, in violation of the commerce clause. The court also determined that the plaintiffs (which were corporations) had not been properly certified as a class and, therefore, could not invoke the protection of the privileges and immunities clause, U.S. Const. art. IV, § 2, cl. 1.

The court held that the plaintiffs were not entitled to tax refunds or attorney fees pursuant to § 1988:

> The purposes underlying the original enactment of section 1983 were to override discriminatory state laws, to provide a remedy where state law was inadequate, and to provide a federal remedy where the state remedy, although adequate in theory, was unavailable in practice. *Monroe v. Pape*, 365 U.S. 167, 173-74 (1961), *overruled on other grounds*, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Although the plaintiffs argue that section 1983 provides redress for "any" violation of constitutional or federal statutory rights, section 1983 has not been so construed. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 615-20 (1979) (supremacy clause violation not redressable under § 1983); *Poirer v. Hodges*, 445 F.Supp. 838, 842 (M.D. Fla. 1978) (contract clause violation not redressable under § 1983).
>
> We do not believe that the purposes of section 1983 would be furthered by a holding that a violation of the commerce clause is redressable through an action under that statute. The United States Court of Appeals for the Eighth Circuit has held that a violation of the commerce clause is not a basis for applying section 1983. *Consol. Freightways Corp. of Del. v. Kassel*, 730 F.2d 1139 (8th Cir.), *cert. denied*, 105 S.Ct. 126 (1984); *see also Private Truck Council v. Secretary of State*, 503 A.2d at 220-22.

*But see Kennecott Corp. v. Smith*, 637 F.2d 181, 186 n.5 (3d Cir. 1980); *Confederated Salish & Kootenai Tribes v. Moe*, 392 F. Supp. 1297, 1304-05 (D. Mont. 1974), *aff'd on other grounds*, 425 U.S. 463 (1976). The Eighth Circuit based its holding on the ground that the commerce clause does not establish individual rights, but rather allocates power between State and federal governments. *Kassel, supra* at 1144.

Both the commerce clause and the supremacy clause "limit the power of a state to interfere with areas of national concern. Just as the Supremacy Clause does not secure rights within the meaning of § 1983, neither does the Commerce Clause." *Kassel*, 730 F.2d at 1144 (footnote omitted). "The Commerce Clause created no rights or privileges; it established no law other than the law of jurisdiction to regulate those engaged in interstate or foreign commerce." *Id*. at 1145 (quoting B. GAVIT, COMMERCE CLAUSE, 32-33 (1932)). The Eighth Circuit concluded that "[a]lthough individuals are oftentimes benefited through the indirect protection resulting from the limitations placed on the states through the dormant Commerce Clause doctrine, such benefit is not the same thing as a 'right' secured by the Constitution within the meaning of § 1983." *Id*.

We agree that a commerce clause violation is not redressable under section 1983. We therefore deny the plaintiffs' claims for refunds of taxes paid before the establishment of the escrow fund. The plaintiffs' claims for attorney's fees also must fail. The plaintiffs have not stated a cause of action under section 1983, and thus cannot recover attorney's fees under 42 U.S.C. § 1988 (1982), which provides for attorney's fees in, *inter alia*, section 1983 actions.

128 N.H. at 476-77, 517 A.2d at 1157.

In *Private Truck Council v. State*, 221 N.J. Super. 89, 534 A.2d 13 (1987), *aff'd* 111 N.J. 214, 544 A.2d 33 (1988), the plaintiffs challenged the constitutionality of a retaliatory tax imposed on certain trucking operations, claiming that New Jersey's Counterpart Fee Act violated the commerce clause and

the privileges and immunities clause of the U.S. Constitution. The plaintiffs also contended that they were entitled to refunds of the moneys unlawfully collected, as well as counsel fees and costs under § 1983.

The appellate division of the New Jersey Superior Court determined that the tax was in violation of the commerce clause and found that the plaintiffs were entitled to refunds from the date their complaint was filed. The court did not consider the merits of the plaintiffs' claim that the act was unconstitutional under the privileges and immunities clause. With respect to the plaintiffs' request for counsel fees, the court held:

> [I]t is sufficient to note that 42 *U.S.C.* § 1983 was not intended to apply to this type of action. *See Consol. Freightways Corp. of Del. v. Kassel,* 730 *F.*2d 1139, 1145-1147 (8th Cir.1984), *cert.* den. 469 *U.S.* 834, 105 *S. Ct.* 126, 83 *L.Ed.*2d 68 (1984); *Private Truck Council v. Secretary of State,* [503 A.2d] at 220-222; *Private Truck Council of America v. State,* [128 N.H. at 466,] 517 *A.*2d at 1156-1157.

221 N.J. Super. at 97, 534 A.2d at 18.

Finally, in *State of Ga. v. Private Truck Council &c.*, 258 Ga. 531, 371 S.E.2d 378 (1988), the Supreme Court of Georgia held that state statutes imposing highway user taxes on vehicles registered in certain states unconstitutionally discriminated against interstate commerce. The court, however, held that the plaintiffs were not entitled to attorney fees under § 1988.

> We agree with the state that plaintiffs may not recover attorney fees under 42 USC § 1988 for the Commerce Clause violation in this case. *Consolidated Freightways Corp. of Delaware v. Kassel,* 730 F2d 1139 (8th Cir. 1984); *Private Truck Council of America, Inc. v. Secretary of State,* 503 A2d, supra; *Private Truck Council of America, Inc. v. State of New Hampshire,* 517 A2d, supra.

258 Ga. at 535, 371 S.E.2d at 381.

In addition to his commerce clause claim, the plaintiff further alleged that §§ 60-305.02 and 60-305.03 (Reissue 1984) were in violation of the privileges and immunities clause, U.S. Const. art. IV, § 2, cl. 1, which provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of

Citizens in the several States." Section 1983 embodies individual rights cognizable under the privileges and immunities clause. *Intern. Organization of Masters, Etc. v. Andrews*, 831 F.2d 843 (9th Cir. 1987).

In his second amended petition the plaintiff alleged:

2. Plaintiff Mark E. Dennis owns and operates Dennis Trucking, a sole proprietorship with its principal place of business in Ohio. He is an owner of a nonresident vehicle for purposes of the taxes and fees imposed under Sections 60-305.02 and 60-305.03, which vehicle is duly authorized to operate in the State of Nebraska.

. . . .

13. Plaintiff Mark E. Dennis owns one vehicle, which is registered in the State of Ohio. . . .

. . . .

17. The retaliatory taxes and fees imposed pursuant to Sections 60-305.02 and 60-305.03 constitute a denial of the privileges and immunities of the plaintiff, whose vehicle is registered outside the State of Nebraska, because they are imposed based on the taxpayer's residence in another state. No comparable tax is imposed on residents of Nebraska. Accordingly, these taxes discriminate against nonresidents in violation of the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 of the United States Constitution.

The trial court resolved this issue against Dennis.

In considering a statute challenged on the basis of the privileges and immunities clause, a distinction must be made based upon residence or citizenship.

The plaintiff operates one tractor and two trailers in interstate commerce. Since his tractor is registered in Ohio, he is subject to taxation under §§ 60-305.02 and 60-305.03 when he operates in Nebraska. Pursuant to a reciprocity agreement between Nebraska and Ohio, owners of vehicles which are registered in Ohio are granted full license reciprocity for interstate movement in Nebraska and pay no registration fees to Nebraska; however, when operating in Nebraska, owners of such vehicles must pay a fee of 1 or 2 cents per mile. This fee mirrors a like charge imposed by Ohio on owners of

Nebraska-registered vehicles which operate in Ohio.

The purpose of the privileges and immunities clause "is to outlaw classifications based on the fact of non-citizenship unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Toomer v. Witsell*, 334 U.S. 385, 398, 68 S. Ct. 1156, 92 L. Ed. 1460 (1948). The clause " 'does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States.' " *Hicklin v. Orbeck*, 437 U.S. 518, 525, 98 S. Ct. 2482, 57 L. Ed. 2d 397 (1978), quoting *Toomer v. Witsell, supra*. "Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Baldwin v. Montana Fish and Game Comm'n*, 436 U.S. 371, 383, 98 S. Ct. 1852, 56 L. Ed. 2d 354 (1978). "The Privileges and Immunities Clause, by making noncitizenship or nonresidence an improper basis for locating a special burden, implicates not only the individual's right to nondiscriminatory treatment but also, perhaps more so, the structural balance essential to the concept of federalism." *Austin v. New Hampshire*, 420 U.S. 656, 662, 95 S. Ct. 1191, 43 L. Ed. 2d 530 (1975).

Section 60-305.02 provided:

> *Trucks, truck-tractors, semitrailers, trailers, or buses, from states other than Nebraska*, entering Nebraska shall be required to comply with all the laws and regulations of any nature imposed on Nebraska trucks . . . and to comply with all the requirements as to payment of all license fees, permit fees, and fees of whatever character which owners of trucks . . . owned and operated in Nebraska, are required to pay when operating in such foreign state, unless the state or states, *in which such trucks . . . are domiciled*, grant reciprocity comparable to that extended by the laws of Nebraska.

(Emphasis supplied.)

Section 60-305.03 provided:

> (1) In case a foreign state . . . is not reciprocal as to license fees on commercial trucks . . . the owners of such

*nonresident vehicles* from those states or territories will be required to pay the same license fees as are charged residents of this state in such foreign state or territory. In case no fees are charged in Nebraska on trucks . . . other than license fees, and the reciprocity law of any other foreign state . . . does not act to exempt Nebraska trucks . . . operating in that state from payment of all fees whatsoever, the owners of such *foreign trucks* . . . shall be required to pay a fee in an amount equal to the fee of whatever character, other than license fee, is charged by such other state to foreign trucks . . . .

. . . .

(7) Properly registered shall mean a vehicle licensed or registered in one of the following: . . . (b) *the jurisdiction in which a commercial vehicle is registered, where the operation in which such vehicle is used has a principal place of business therein, and from or in which the vehicle is most frequently dispatched, garaged, serviced, maintained, operated, or otherwise controlled, and the vehicle is assigned to such principal place of business* . . . .

(Emphasis supplied.)

The plaintiff contends that because § 60-305.03 imposes taxes only upon " 'the owners of . . . nonresident vehicles,' " and not on residents of Nebraska, the challenged taxes and fees "clearly deny the former substantial equality of treatment with the latter." Brief for appellant at 26. The taxation imposed pursuant to §§ 60-305.02 and 60-305.03 is not related to the resident or nonresident status of the motor carrier, but is based upon the state where the particular vehicle is registered. If a citizen of Nebraska owned a vehicle registered in a state which imposed third-structure taxes on vehicles registered in Nebraska (i.e., Arkansas, Arizona, Idaho, Wyoming, New York, Pennsylvania, Oregon, Nevada, or Ohio), the Nebraska citizen would be subject to retaliatory taxation pursuant to §§ 60-305.02 and 60-305.03. In this respect, the owners of foreign-registered vehicles who are not citizens or residents of Nebraska are treated no differently from the owners of foreign-registered vehicles who are citizens of Nebraska. Since the statutes do not make a distinction based upon residence or

citizenship, the statutes do not violate the privileges and immunities clause.

Furthermore, only an out-of-state citizen has standing to bring a challenge under the privileges and immunities clause. See, *Bradwell v. The State,* 83 U.S. (16 Wall.) 130 (1872); *White v. Thomas,* 660 F.2d 680 (5th Cir. 1981), *cert. denied* 455 U.S. 1027, 102 S. Ct. 1731, 72 L. Ed. 2d 148 (1982). The second amended petition does not allege that the plaintiff is a citizen of another state, only that he owns and operates Dennis Trucking, a sole proprietorship with its principal place of business in Ohio, that his truck is registered in Ohio, and that he is subject to taxation because his truck is registered in Ohio.

The case was tried on a stipulated record consisting of two exhibits: a stipulation of facts and the affidavit of the Lancaster County assessor. There was no proof that the plaintiff is a citizen of another state.

There was no error in dismissing the plaintiff's claim based on a violation of the privileges and immunities clause. The statutes do not discriminate on the basis of citizenship or residency, and there was no proof that the plaintiff was a citizen of another state and had standing to pursue a claim under the privileges and immunities clause.

By the cross-appeal the defendants contend that the trial court erred in finding that the plaintiff and his attorneys were entitled to payment of their expenses and reasonable fees under the equitable fund doctrine. This finding was in error for several reasons.

A statement of the common fund doctrine is found in *Summerville v. North Platte Valley Weather Control Dist.,* 171 Neb. 695, 696-97, 107 N.W.2d 425, 427 (1961):

> [W]here one has gone into a court of equity and, taking the risk of litigation on himself, has created or preserved or protected a fund in which others are entitled to share, such others will be required to contribute their share to the reasonable costs and expenses of the litigation, including reasonable fees to the litigant's counsel.

The doctrine presupposes the existence of a fund. As the court in *Crane Towing v. Gorton,* 89 Wash. 2d 161, 176-77, 570 P.2d 428, 437 (1977), said: "As the name implies, the 'common

fund' doctrine requires the prevailing party to have brought suit to preserve or protect a fund which benefits the party and others."

There is no fund in this case, much less a fund within the jurisdiction of the trial court.

> The common fund must be an immediate fund from which attorney's fees may be awarded at trial. *Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 585 P.2d 71 (1978). The effect of this litigation may well benefit other nursing homes in the state. However, it did not create a presently existing common fund at trial from which reasonable attorney's fees could be awarded.

*United Nursing Homes v. McNutt*, 35 Wash. App. 632, 643, 669 P.2d 476, 483 (1983).

In *Hoffman v. Lehnhausen*, 48 Ill. 2d 323, 329, 269 N.E.2d 465, 469 (1971), the Supreme Court of Illinois said:

> Several considerations set this case apart from the usual situation in which attorneys fees are allowed from a fund brought into court by one who sues as a member of a class. No fund was involved in this case. The attorneys for the plaintiffs say that this circumstance is irrelevant, because the trial judge refused to enter an order which would have created such a fund. Again we think, however, that the ruling of the trial court was correct. We are aware of no authority under which the process of tax collection and distribution could have been interrupted to divert from the governmental bodies that had levied the taxes an amount fixed by the court as fees for the attorneys for the plaintiffs.

In *Lebanks v. Spears*, 417 F. Supp. 169, 174 (E.D. La. 1976), the court said:

> *Mills* [*v. Electric-Auto Lite*, 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970),] and *Hall* [*v. Cole*, 412 U.S. 1, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973)], and the discussion of the common fund theory in *Alyeska* [*Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975)], require for an award of attorneys' fees under the common benefit rationale (1) an ascertainable class of beneficiaries, easily identifiable, and (2) a source

of funds common to the class from which the award can be made. Public interest litigation generally cannot meet these requirements. Actions to vindicate constitutional rights which benefit the public usually can present only the "private attorney general" theory for the award of attorneys' fees. Prevailing parties in public interest litigation ought not to be permitted, by emphasizing the importance of enforcing constitutional rights, to attach the "common benefit" label to what is really the "private attorney general" theory, and ultimately to merge the two theories.

In *Hamer v. Kirk*, 64 Ill. 2d 434, 442, 356 N.E.2d 524, 528 (1976), the court said: "[I]n the absence of a fund, a plaintiff's attorney is not entitled to attorney's fees merely because he has conferred a benefit upon members of a class." The court held that because no fund had been created, nor did the court have the authority to create a fund, the substantial benefit theory did not apply to the facts presented. The court further held that no statutory authority existed on which to base an award of attorney fees under the private attorney general theory. The order of the trial court denying an award of attorney fees to the plaintiffs was affirmed.

In *Hamer v. Kirk, supra*, the Supreme Court of Illinois held that attorney fees could not be awarded under the common fund doctrine where there was no fund within the control of the court. The Supreme Court reviewed its prior decisions in *Rosemont Bldg. Sup. v. Highway T. Auth.*, 51 Ill. 2d 126, 281 N.E.2d 338 (1972), and *The People v. Holten*, 304 Ill. 394, 136 N.E. 738 (1922), in which the court recognized that if a fund is to serve as a source of attorney fees, said fund must be under the control of the court. In *Hamer, supra* at 441, 356 N.E.2d at 527, the court concluded that "[s]ince no fund had been placed under control of the court in the instant case, the trial court was without authority to award attorney's fees to the petitioner." See, also, *Van Emmerik v. Montana Dakota Utilities Co.*, 332 N.W.2d 279 (S.D. 1983), *cert. denied* 464 U.S. 915, 104 S. Ct. 278, 78 L. Ed. 2d 257; *Eckford v. Borough of Atlanta*, 173 Ga. 650, 160 S.E. 773 (1931); *Fitzgerald v. City of Philadelphia*, 87 Pa. Commw. 482, 487 A.2d 485 (1985); *Von Holt v. Izumo*

*Taisha Mission*, 44 Haw. 147, 355 P.2d 40 (1960), *aff'd on rehearing* 44 Haw. 365, 355 P.2d 44; *Satoskar v. Indiana Real Estate Commission*, 517 F.2d 696 (7th Cir. 1975), *cert. denied* 423 U.S. 928, 96 S. Ct. 276, 46 L. Ed. 2d 256 (1975); *Townsend v. Edelman*, 518 F.2d 116 (7th Cir. 1975).

In *Private Truck Council of America v. State*, 128 N.H. 466, 477, 517 A.2d 1150, 1157 (1986), a suit nearly identical to the case at bar, the Supreme Court of New Hampshire found that the plaintiffs had "not demonstrated a common law right to attorney's fees under the theory of a 'common fund' for the benefit of a class because, as we have indicated, this action has not been properly certified as a class action."

Each person who may be entitled to a refund must individually file a separate claim for a refund. Each such claim may be denied for a variety of reasons. The merits of each claim for a refund must be determined on a case-by-case basis. There is no evidence that anyone, including the plaintiff, has filed a claim and is entitled to a tax refund.

The plaintiff argues that the trial court should have found that the common fund consisted of the total amount of taxes subject to refund. Not only was there no evidence of what that amount might be, the trial court had no jurisdiction of other persons who may have paid the invalid taxes or any way of knowing whether such amounts would be subject to a refund if claims were made.

There was no basis upon which an award of attorney fees could have been made against the State of Nebraska because the State has not waived its sovereign immunity as to attorney fees under circumstances such as this case. See, Neb. Const. art. V, § 22; *Gentry v. State*, 174 Neb. 515, 118 N.W.2d 643 (1962).

The judgment of the district court is affirmed, except as to that part which provides: "The plaintiff and his attorneys are entitled under the Equitable Fund Doctrine to payment of their expenses and reasonable fees." That part of the judgment is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.

FAHRNBRUCH, J., not participating.